Dan L. Stormer (State Bar No. 101967)
dstormer@hadsellstormer.com
Anne Richardson (State Bar No. 151541)
arichardson@hskrr.com
**HADSELL STORMER KEENY RICHARDSON & RENICK LLP**
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone (626) 585-9600; Fax (626) 585-9610

*Counsel for Plaintiff*
*Stephan Ballard*

William S. Waldo (State Bar No. 73973)
wwaldo@bononilawgroup.com
Michael J. Bononi (State Bar No. 130663)
mbononi@bononilawgroup.com
**BONONI LAW GROUP, LLP**
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone (213) 553-9200; Fax (213) 553-9215

*Counsel for Plaintiff*
*Stephan Ballard*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION - ROYBAL FEDERAL BLDG

| | |
|---|---|
| STEPHAN L. BALLARD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MISTRAS GROUP, INC., a Delaware Corporation; CONAM INSPECTION AND ENGINEERING SERVICES, INC., a Delaware Corporation; and MISTRAS HOLDINGS GROUP, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CV10-3186 PSG (SSx)<br><br>[Consolidated with Case Nos. CV 09-7146 PSG (SSx) and CV 10-6312 PSG (SSx)]<br><br>**Los Angeles County Superior Court Case No. BC 434699**<br><br>**DECLARATION OF WILLIAM S. WALDO IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, AND CLASS REPRESENTATIVE PAYMENTS**<br><br>*[Ntc of Mtn for Award of Attys' Fees & Costs; Decl. of Richardson & Exhs Filed Concurrently Herewith]*<br><br>Date:  August 1, 2011<br>Time: 8:30 a.m.<br>Ctrm: 880 |

I, William S. Waldo, hereby declare and state as follows:

1.      I am attorney at law duly admitted to practice in the state of California.  I submit this declaration in support of Plaintiff's Motion for Award of Attorneys' Fees, and Class Representative Payments.  I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently testify thereto under oath.

2.      I am the lead attorney from Bononi Law Group, LLP in the matter filed by Plaintiff Patrick Quiroz in Los Angeles Superior Court on September 4, 2009.  ("Quiroz Wage and Hour Action"), which was subsequently removed to this Court and styled, *Patrick D. Quiroz, on behalf of others similarly situated, Plaintiff, vs. Mistras Group, Inc., a Delaware corporation; Conam Inspection and Engineering Services, Inc., a Delaware corporation; Mistras Holdings Group; and Does 1 through 100, Defendants, Case No.* CV09-7146 PSG .

3.      The Quiroz Wage and Hour Action and the related action styled *Patrick D. Quiroz, Plaintiff, vs. Mistras Group, Inc., a Delaware Corporation; Conam Inspection and Engineering Services, Inc., a Delaware Corporation; Mistras Holdings Group; and Does 1 Through 100, Inclusive, Defendants*, Case No. CV10-6312 PSG, were administratively closed by this Court and consolidated with the Ballard action,  *Stephan L. Ballard, on behalf of himself and all others similarly situated, Plaintiff, vs. Mistras Group, Inc., a Delaware Corporation; Conam Inspection and Engineering Services, Inc., a Delaware Corporation; and Mistras Holdings Group, and Does 1 through 100, inclusive, Defendants*, Case No. CV10-3186 PSG (the "Ballard Action").

## RESOURCES COMMITTED TO THE QUIROZ WAGE AND HOUR CASE AND THE BALLARD ACTION

4.      Prior to the filing of the lawsuit, I spent two months investigating Plaintiffs' claims.  I interviewed putative class members, gathering information

---

1   and documents related to the claims at issue.  At the conclusion of that time,

2   Plaintiff Quiroz filed suit setting forth those claims which had been substantiated

3   through the extensive pre-filing investigation.

4       5.      After filing, counsel for Plaintiffs and Defendants discussed the

5   Plaintiffs' claims and evidence and the prospects of conducting a mediation to

6   determine if resolution was possible at the early stages of the litigation.  Plaintiffs

7   insisted that substantial discovery was required so that both sides would be fully

8   informed of the Plaintiffs' likelihood of prevailing at trial and the range of

9   outcomes that could be expected before they would commit to mediation.

10      6.      Plaintiffs conducted significant investigation into the facts and

11  substantial research into the law during the prosecution of this litigation.  Such

12  discovery and investigation includes the following:

13

14      •      Initial disclosures, document production which included wage records

15              and policy documents, responses to requests for admissions and

16              interrogatories to each of the defendants;

17      •      Documents produced in response to a request for personnel records

18              and wage records made pursuant to Labor Code Sections 432 and

19              226(b);

20      •      The Deposition of Wendy Meyers, the Defendants' Human Resources

21              Manager;

22      •      Review and analysis of documents defendants filed as exhibits to

23              declarations in opposition to motions for remand and class

24              certification;

25      •      Review of the record in the prior case styled *Gerald Lee and Steven*

26              *Taylor, individually and on behalf of all others similarly situated, v.*

27              *Conam Inspections And Engineering Services, Inc.,* United States

28

1                District Court Case No. C-07-4956 SI, Northern District of

2                California, including the declarations and exhibits filed therein;

3     •     Review and analysis of the deposition of Dennis Bertolotti

4                ("Bertolotti"), the "person most knowledgeable" testifying on behalf

5                of Defendants in the *Lee* matter;

6     •     A thorough investigation of the wages and working conditions of the

7                named Plaintiffs and other employees; and

8     •     extensive legal research of the law as applied to the facts discovered

9                regarding Plaintiffs' claims and damages and potential defenses

10               thereto.

11     7.    Through substantial formal and informal discovery occurring over a

12 period of many months, Defendants provided Plaintiffs' counsel with documents,

13 including wage records, personnel records, policy documents, and data reflecting

14 employees in California, including their positions and location, number of weeks

15 employed and type of employee, for the time period beginning in 2007 and late

16 2010, for all of Defendants' locations in California. Plaintiffs also interviewed

17 and obtained written declarations from class members.

18     8.    To assist Plaintiffs in developing a sophisticated penalty analysis,

19 Plaintiffs retained Todd Stefan, Vice President of Setec Investigations, who

20 analyzed the available data and prepared an analysis modeling the penalties

21 Plaintiffs contended they were likely to recover at trial, by applying a number of

22 different assumptions and scenarios. The penalty analysis included, but was not

23 limited to, waiting time penalties and penalties under Labor Code section 204b,

24 226(b), 226.3 and 2699(f)(2).

25     9.    On September 8, 2010, the parties attended a mediation before the

26 Hon. Dickran Tevrizian (Ret.), a previous District Court Judge for the Central

27 District of California. Judge Tevrizian is a highly regarded private mediator who is

28

---

intensely familiar with wage-and-hour class action lawsuits. At the mediation, the parties exchanged detailed information concerning the claims, defenses and alleged damages at issue. Based upon the investigation and discovery completed by Plaintiffs, the parties were able to reach a settlement shortly after the mediation. The settlement was ultimately reduced to writing and executed by all of the parties.

10.     In the course of investigating the claims of Quiroz and Ballard and the potential claims on behalf of the class, I had lengthy personal meetings with them and spoke with them dozens of times, including lengthy conversations on nights and weekends.  Both Ballard and Quiroz have been willing and able to prosecute the claims on behalf of the current and former California employees, including providing assistance in locating other employees and former employees with relevant information, and in arranging interviews between me and the potential class members.  Both Quiroz and Ballard assisted me with deposition preparation and Quiroz was deposed in a lengthy deposition.  Both Quiroz and Ballard attended and participated in the mediation.

### BONONI  LAW GROUP'S ORDINARY BILLING RATES

11.     Bononi Law Group, LLP ("BLG") is a small law firm located in Los Angeles, California that specializes in employment law.  BLG typically employs about eight lawyers.  We represent both plaintiffs and defendants and practice regularly in both federal and state court.

12.     The retainer agreement which BLG executed with Plaintiff Ballard is a "contingent fee" agreement which provides subject to court approval, Class Counsel collectively shall be entitled to payment of attorneys' fees representing up to 40% of any amount recovered for benefit of the Class in this action.  BLG is not seeking fees in the Quiroz Wage and Hour Action because class certification was denied in that case, a decision which has not been tested on appeal.

---

13.     Since the inception of this matter through April 13, 2011, BLG devoted approximately 265 professional hours to the prosecution of the Ballard Action.   Based upon my experience in other class action matters, I believe that the time expended by my firm in connection with this matter, when compared to the result achieved for the Class, is reasonable in amount and was necessary to ensure the successful prosecution this action on behalf of the Class.

14.     The following is a summary listing each lawyer and legal assistant which BLG is seeking compensation for services, the hours each individual expended, and the hourly rate at which compensation is sought.  The figures and amounts reflected below do not include a multiplier or other factor to account for the risks involved in the case or the wholly contingent nature of my firm's representation of the Class, or any adjustment for the complexity of the litigation, the level of the opposition encountered, the preclusion of other employment, or other factors that might justify a higher level compensation for the work performed.

| Professional | Position | Year of Law School Graduation | Billable Hours | Billable Rate | Total |
|---|---|---|---|---|---|
| William Waldo | Partner | 1976 | 89.2 | $700 | $62,400.00 |
| Michael Bononi | Partner | 1987 | 1.8 | $625 | $1,125.00 |
| Amy Patton | Associate | 1997 | 162.2 | $400 | $64,880.00 |
| Anne Kelson | Associate | 2008 | 8.4 | $300 | $2,520.00 |
| Lisa Bononi | Paralegal | NA | 12.1 | $125 | $1,512.50 |
| Totals | | | | | $132,437.00 |

## EDUCATIONAL BACKGROUND

15.     I was Valedictorian of my class at Georgetown University, where I graduated *summa cum laude* and was elected to Phi Beta Kappa.

1      16.    I am a *magna cum laude* graduate of the University of Michigan Law
2  School, where I was the Administrative Editor of the *Michigan Law Review*.

3      17.    Immediately following my graduation from law school, I served a
4  one-year clerkship to the Honorable Ellsworth A. Van Graafeiland, Judge, United
5  States Court of Appeals, Second Circuit, New York.

6  **PROFESSIONAL BACKGROUND**

7      18.    I have been a member of the State Bar of California since 1977, and
8  have been admitted to practice in the United States District Court for the Central
9  District of California for more than three decades.  For approximately the past 25
10 years, I have been admitted to practice before the United States District Courts for
11 the Southern District, Eastern District, and Northern District of California.  I am
12 also admitted to practice before the United States Court of Appeals for the Ninth
13 Circuit.

14     19.    I joined Paul, Hastings, Janofsky & Walker, LLP ("Paul Hastings") as
15 an associate attorney on September 6, 1977.  From my first day as an associate at
16 Paul Hastings, and later as a partner for twenty-five (25) years, I was a member of
17 the Paul Hastings Employment Law Department (known as the Labor Department
18 when I joined).  At my request, Paul Hastings granted me retired partner status
19 effective January 31, 2009.  On February 1, 2009, I became a partner at Bononi
20 Law Group, LLP.

21     20.    I have specialized in employment law for my entire professional
22 career.  For my 31 year career at Paul Hastings, my practice focused on
23 representing employers (although I did periodically represent employees).  For
24 approximately ten years, I was Vice-Chair of Paul Hastings' Employment Law
25 Department, which has historically ranked as one of the premier employment law
26 practices in the world.  At the Bononi Law Group, LLP, I represent both
27 employees and employers in employment litigation.

28

21.     For almost three decades I have given lectures and taught courses throughout the United States on employment law topics.  I have taught California CEB courses on a variety of employment law issues.

22.     I was invited by the Employment Law Section of the Florida bar to lead a panel presentation at its annual meeting on the topic of California wrongful discharge litigation.  I was also invited by the State Bar of Alaska to teach a one-day seminar in Anchorage, Alaska on wrongful discharge litigation.

23.     For more than 20 years, I have taught a highly-regarded 2 day course on jury trial litigation of employment claims which has been held at locations throughout the United States.  I estimate that in the range of 1000 attorneys from throughout the entire United States have taken my course.  I have given in excess of 300 speeches on employment law issues to both lawyers and non-lawyers throughout the United States.

24.     I have authored many articles on employment law issues.  At the request of the business editor of the *Los Angeles Times*, I wrote three separate articles on employment law issues which were published in the Sunday Business Section of the *Los Angeles Times*.  Other articles which I have authored were published in law journals, including *The Labor Lawyer*, which is the official publication of the Labor and Employment Law Section of the American Bar Association.

**PROFESSIONAL RECOGNITION**

25.     On the basis of peer selection, I have been listed in *The Best Lawyers In America* for more than 20 years.  Chambers USA listed me as one of only approximately 75 leading California employment lawyers in *Chambers USA, America's Leading Lawyers for Business*, which is internationally recognized as the most prestigious ranking of lawyers.

26.     In 2009, I was also one of only 36 labor and employment lawyers in

California to be recognized in the American Bar Association Section of International Law's listing of "Who's Who Legal." I have been listed in the specialty area of employment litigation as a Southern California Super Lawyer for more than ten years.

**EMPLOYMENT LITIGATION/WAGE HOUR/CLASS ACTION EXPERIENCE**

27. I have first-chaired trials of employment law claims in the Los Angeles County Superior Court since approximately 1978, and have first-chaired trials of employment law claims in this Court since approximately 1979 or 1980.

28. Since the early 1980's when the California Supreme Court decided *Tamany v. Atlantic Ritchfield Co.*, the case which is widely regarded as beginning of the explosion of employment litigation in California, I have specialized in employment litigation in state and federal courts, with a special emphasis on jury trials.

29. I have handled dozens of wage-hour hearings before the California Labor Commissioner (known as "Berman Hearings"), and have tried a double-digit number of *de novo* appeals of Labor Commissioner orders in the Superior Court. I have also advised hundreds of clients on countless wage-hour legal issues arising under the California Labor Code.

30. I have represented clients in class actions since approximately 1981 when I represented a defendant in a Title VII race class action which was pending in the United States District Court for the Central District of California.

31. I was lead counsel in a wage-hour class action for the first time, by my recollection, in the early to mid-1990's when I represented a defendant who was sued for misclassifications of its store managers at the time when wage-hour class action litigation in California was just beginning. Since that time, I have represented clients in wage-hour class actions involving misclassification,

1  underpayment of wages, missed meal periods, missed break periods, "time

2  shaving" of employee wages from time clock punches, defective wage statements,

3  and numerous other wage-hour issues which are routinely raised in class actions in

4  both the California state and federal courts.  In 2008-09, I was co-lead counsel

5  representing the defendant in a California state-wide wage-hour class action in the

6  Santa Clara County Superior Court which alleged claims for (1) failure to provide

7  accurate itemized wage statements; (2) failure to pay employees within the pay

8  period requirements in California Labor Code section 204; (3) failure to

9  compensate for all hours worked, missed breaks, and missed rest periods; and (4)

10  violations of Business & Professions Code sections 17200 *et seq.*  In my last full

11  year at Paul Hastings, I was a member of the Paul Hastings team defending UPS in

12  a state-wide wage-hour class action which was before Judge Pregerson in this

13  Court where the purported class included 5000 California employees.

14       32.       For the last 20 years of my professional career, I have developed a

15  specialty in handling complex employment litigation.  For example, in 2002 and

16  2003 I was the lead trial attorney in a jury trial where the plaintiff sought a remedy

17  for himself and approximately 400 similarly situated disabled employees of the

18  Southern California Gas Company.  I tried that lawsuit to a successful jury verdict.

19  The evidentiary issues alone were so extraordinarily complex that the *in limine*

20  motions took the trial judge and counsel approximately 15 days of hearings and

21  almost 9 months to resolve before the jury trial could begin.

22       33.       I have been the lead trial counsel in more than 30 jury trials where the

23  jury either returned a verdict in favor of my client, or my client prevailed during

24  the trial either because the trial judge directed a verdict for my client, or the

25  opposing party dismissed its claims mid-trial.  These jury trials have taken place in

26  the San Diego County Superior Court (multiple), the Los Angeles County Superior

27  Court (multiple), the Ventura County Superior Court (multiple), the United States

28

---

1  District Court for the Southern District of California (multiple), the United States

2  District Court for the Central District of California (multiple), the United States

3  District Court for the Eastern District of California, and the United States District

4  Court for the District of Oregon.

5      34.     I have also been the lead trial counsel in well over one hundred (100)

6  bench trials (in numerous state and federal courts) and arbitrations involving

7  wage-hour, employment, and labor law claims.

8      35.     My billing rate at BLG is $700 per hour.  Before seeking retired

9  partner status with Paul Hastings, my 2009 billing rate was $790.  My rate at Paul

10 Hastings had increased in the amount of $50 per hour each year over five years

11 prior to my retirement.  In the month immediately prior to my retirement on

12 February 1, 2009, I performed work on a wage/hour class action which was billed

13 and collected at my 2009 rate of $790 per hour.

14 **OTHER BLG PROFESSIONALS**

15     36.     Michael J. Bononi is the founding partner of the Bononi Law Group.

16 He is a 1987 graduate *magna cum laude* from Cornell Law School in 1987 where

17 he was an editor of the Cornell Law Review.  Mr. Bononi started his legal career

18 at Latham & Watkins where he was voted into the firm's partnership in October

19 1994, when he left to co-form Bononi & Kouri LLP where worked until 2004.  In

20 2004 Bononi & Kouri LLP dissolved and he formed Bononi Law Group.  In

21 February of 2009, I joined Bononi Law Group as a partner and we formed  Bononi

22 Law Group, LLP.

23     37.     Mr. Bononi has substantial experience in handling complex and class

24 action litigation.  He has been co-counsel of record for Plaintiffs' in the following

25 employment class actions: *Howard v. Gap, Inc.*, Case No. CV 06773-WHA;

26 *Tarlecki v. Bebe Stores, Inc.* CV 01777-MHP and *Janicki v. Lane Bryant, Inc.*

27 Case No. 066976-R.  He has also represented defendants in several large and

28

1    complex mass tort litigations including, but not limited to, lawsuits arising from a

2    hotel fire in Puerto Rico, a school bus accident in Palm Springs involving 54

3    plaintiffs, and several toxic pollution sites in California.

4         38.    Mr. Bononi is a frequent speaker at employment law seminars and

5    educational institutions.  For the past five years he has been designated a

6    "SuperLawyer" in the area of employment and labor law by the Los Angeles

7    Magazine.  This designation is based upon votes from our peers and is supposed to

8    represent the top 5% of employment lawyers in Southern California.

9         39.    Mr. Bononi has been involved in virtually every aspect of both the

10   Ballard and Quiroz Actions from the initial intake in our office to the filing of this.

11   I have consulted with him on the appropriate legal theories. He has reviewed all

12   case filings, participated in all strategic decisions, and undertaken a factual

13   investigation of the operative wage claims. He has spent considerable time

14   researching the legal issues involved and speaking with Plaintiffs about the

15   substance of their claims.  Mr. Bononi's billing rate is $625 per hour.

16        40.    Amy Patton became an associate with BLG in February 2010.  Ms.

17   Patton was admitted to practice law in Texas in 1997, California in 1999, and

18   Arizona in 2009.  She is a 1997 graduate *magna cum laude* of the University of

19   Houston Law Center.  She has practiced extensively in labor and employment law

20   and has represented employees and employers in numerous wage/hour class

21   actions. Ms. Patton drafted the class certification motion, motion for remand, the

22   amended complaint, the mediation brief, the reply brief on the motion for remand,

23   and handled much of the post-settlement communication and the stipulations post

24   settlement.  Her billing rate is $400 per hour and she spent a total over 162 hours

25   on the case through April 13, 2011.

26        41.    Anne Kelson is an associate with BLG.  Ms. Kelson was admitted to

27   practice law in California in 2008.  She is a 2008 graduate of the University of

28

1  California at Davis School of Law.  Ms. Kelson assisted with performing research

2  and drafting of the motion to remand.  Her billing rate is $300 per hour and she

3  spent a total of over 8 hours on the case through April 13, 2011.

4      42.   Lisa J. Bononi is a senior paralegal and is billed at $125 per hour.

5  She received a Bachelor of Science Degree in Paralegal Studies in 1985 from

6  Winona State University in Minnesota.  She has been employed as a paralegal for

7  over 25 years, including 10 years of employment at Latham & Watkins.  She spent

8  a total of 12.1 hours assisting on this case.

9  **WORK PERFORMED BY BLG IN THIS MATTER**

10      43.   I was charged with overseeing the firm's work on this matter. I

11 personally supervised the work that was done by the associate attorneys and

12 professional staff members at my firm. I coordinated and delegated the work in

13 order to ensure that it was accomplished timely and efficiently without duplication

14 of effort.

15      44.   I have spent extensive time on this case.  I reviewed all

16 documentation from the named Plaintiffs and spent many hours interviewing them

17 and other putative class members.  I thoroughly researched the legal claims and

18 took the lead on drafting each complaint and PAGA letter.  I analyzed all filings

19 and legal defenses of Defendants.  I analyzed the pay records provided by

20 Defendants and identified new claims based on that documentation.  I made most

21 court appearances in this matter and took all depositions.  I spent extensive time

22 analyzing the discovery production and declarations of Defendants' employees

23 and officers.  I handled all settlement efforts on behalf of plaintiffs and attended

24 the mediation.  I have also reviewed drafts of the motion for preliminary approval

25 of the settlement, proposed orders, declarations, and prepared this Declaration.  In

26 all, I have spent more than 89 hours on this case since I became involved, up to the

27 date of the signing of this declaration.

28

---

45.     BLG maintains narrative time records for each individual for whom it seeks compensation. The description of services is a compilation of the billing entries that are inputted daily by the attorneys and professional staff members of my firm into a computerized billing system maintained by my firm. Should the Court so request, Plaintiffs' Counsel will also submit their actual billing records under seal, to be reviewed by this Court in camera.

**BILLING JUDGMENT**

46.     In exercise of my billing judgment, I went through and crossed out certain entries performed by attorneys and paralegals on this case which could be considered redundant or unnecessary.  The total lodestar of hours multiplied by hourly rates spent by BLG attorneys, law student clerks and paralegals <u>after</u> the exercise of this billing judgment is a total of $132,437.00, not including time to be spent after the filing of this declaration.

**COSTS**

47.     BLG has expended a total of $16,387.75 in unreimbursed costs and expenses that were necessarily incurred in connection with the prosecution of this matter. These expenses were incurred solely in connection with this action and are reflected on BLG's books and records as maintained in the ordinary course of business. These books and records are prepared from invoices, receipts, expense vouchers, check records and other records, and are an accurate record of the expenses incurred in this case and are available for submission upon request.  All the categories of costs sought here are typically billed to a client. These expenses are detailed in Exhibit "A" hereto.

**THE SETTLEMENT**

48.     The settlement we have reached in this case is fair, reasonable, and adequate and in the best interests of the class members.  It provides substantial benefit to all class members. The settlement fund of $722,500 will provide

---

1 meaningful monetary relief to Class Members.  The parties have agreed to a
2 common method of allocating the fund among claimants.  This is a reasonable and
3 objective means of approximating the relative value of each claim and, thus,
4 ensures a fair distribution of the fund.

5      49.    The agreement was reached only after months of contentious
6 litigation.  The amount of attorneys' fees and costs requested were agreed to and
7 reached as part of an arm's-length settlement negotiation. The agreement on fees
8 did not take place until after the parties had agreed to the benefits to be provided
9 to the Class.

10      Executed on May 9, 2011at Los Angeles, California.

11      I declare under penalty of perjury under the laws of the State of California
12 and under the laws of the United States of America that the foregoing is true and
13 correct.

14

15                          ___/s/ William S. Waldo_____

16                          William S. Waldo

17

18

19

20

21

22

23

24

25

26

27

28